### PORTER v. JAMES HENRY PACKING CO.

### JAMES HENRY PACKING CO. v. PORTER.

#### No. 11089.

Circuit Court of Appeals, Ninth Circuit.

June 5, 1946.

---

George Moncharsh, Deputy Administrator for Enforcement, OPA, Milton Klein, Director, Litigation Division, David London, Chief, Appellate Branch, and Samuel Rosenwein, Atty., OPA, all of Washington, D. C., and Herbert Bent, Regional Litigation Atty., of San Francisco, Cal., for Paul A. Porter.

Almon Ray Smith and Henry Clay Agnew, both of Seattle, Wash., for James Henry Packing Co.

Before GARRECHT, DENMAN and BONE, Circuit Judges.

GARRECHT, Circuit Judge.

The Administrator of the Office of Price Administration brought action in the lower court against the James Henry Packing Company, a corporation, to recover treble the amount of overcharges in the sale of beef and veal to 25 retail markets at or near Seattle from July 1, 1943 to November 8, 1943, in violation of Maximum Price Regulation No. 169,[1] as amended. The James Henry Packing Company will hereinafter be referred to as the packing company.

The parties to the action stipulated as to certain facts and these facts were found as stipulated.

The 25 retail markets in July 1943 were unable to adequately supply their trade. To furnish these markets with more meat and meat products, the packing company delivered to the 25 retail markets during July two instruments, entitled "Lease" and "Contract of Employment", by which the operators of the 25 retail markets leased their markets to the packing company, and contracted to operate the markets for the packing company for a percentage of the gross receipts. Eight of the 25 markets

---

[1] The pertinent provisions of Maximum Price Regulation No. 169 read:

"Section 1364.401. Prohibition against selling beef and veal carcasses and wholesale cuts, and processed products at prices above the maximum—(a) Beef carcasses and wholesale cuts.—On and after December 16, 1942, regardless of any contract, agreement, or other obligation no person shall sell or deliver any beef carcass or beef wholesale cut, or no person shall buy or receive any beef carcass or beef wholesale cut at a price higher than the maximum price permitted by § 1364.-451; and no person shall agree, offer, solicit or attempt to do any of the foregoing. The provisions of this Revised Maximum Price Regulation No. 169 shall not be applicable to sales or deliveries of beef carcasses or beef wholesale cuts to a purchaser, if, prior to December 10, 1942, such beef carcasses or beef wholesale cuts have been received by a carrier other than a carrier owned or controlled by the seller, for shipment to such purchaser. 'Person', 'Beef carcass,' and 'beef wholesale cut' are defined in § 1364.455."

"§ 1364.406. Evasion.—(a) The price limitations set forth in this revised regulation shall not be evaded, either by direct or indirect methods, in connection with an offer, solicitation, agreement, sale, delivery, purchase, or receipt of, or relating to beef, veal, or processed products separately or in conjunction with any other commodity or services, or by way of any commission, service, transportation, wrapping, packaging or other charge, or discount premium or other privilege, or by tying agreement or other trade understanding, or by changing the selection of, grading, or the style of dressing, cutting, trimming, cooking, or otherwise processing or the canning, wrapping, or packaging of beef, veal, or processed products, or otherwise:
*   *   *   *   *

"(b) Specifically, but not exclusively, the following practices are prohibited:
*   *   *   *   *

"(8) Charging, paying, billing, or receiving any consideration for or in connection with any service for which a specific allowance has not been provided in this Revised Maximum Price Regulation No. 169."

were owned by the operators of the markets, but the other 17 had rented premises. No permission was obtained from the owners of these buildings to enter into a so-called lease with the packing company. No rent was ever paid by the packing company.

The markets under this arrangement paid the maximum prices for the meat and meat products, and in addition paid a total of $19,149.64 to the packing company as a percentage of the gross business of the retail markets.

About July 1, 1943, at the time of entering into the leases, the packing company submitted the instruments to the Office of Price Administration, and the packing company was advised that the lease and contract of employment were evasions of the Maximum Price Regulation No. 169, and the Office of Price Administration particularly objected to a provision for a 30-day cancellation, which was then omitted. On July 30, 1943, the packing company was notified that the leases and contracts constituted evasion, and was again notified on August 30, 1943, and then allowed a reasonable time within which to terminate the leases and contracts.

The lower court found that the packing company sent notices on September 24, 1943 to the 25 retail markets to "omit or deduct all receipts of beef and veal furnished by us," but continued to enforce the leases and contracts, collecting from 5% to 7% of the gross sales until November 8, 1943. On November 1, 1943, the packing company had requested rescission of the leases and contracts.

The lower court further found that the packing company never paid or made any provision to pay any social security tax for the alleged managers and employees of the markets in question. The packing company never applied for any license to operate said retail establishments as required by the laws of the State of Washington. The packing company did not pay any retail sales tax nor file any returns for said sales tax due the State of Washington as provided by law; the packing company never gave any instructions as to management, records, etc., and never authorized any obligations that were incurred by these markets, and the invoices continued to be the same as before the execution of the leases and contracts. The retail markets did get more meat and meat products.

The lower court found that up to September 15, 1943 a reasonable time had been allowed the packing company to cancel the leases and contracts, that failure to cancel them by that time was unreasonable delay in view of the notices to do so on July 30, and August 30, 1943. Collections made after September 15, 1943 were knowingly in violation of the regulations, and thus a result of failure to take practicable precautions, the court found.

The trial court found the leases and contracts were evasions of the regulation, and entered judgment for just the amount of the overcharges from July 1, 1943 to September 15, 1943, in the sum of $13,995.14, and one and one-half times the amount of overcharge from September 15, 1943 to November 8, 1943, in the sum of $7,731.75, together with costs.

Both the Administrator of the Office of Price Administration and the packing company have appealed. The Administrator contends that the lower court erred in not awarding judgment in treble the amount of overcharges for the entire period during which the leases and contracts were in effect. The packing company insists that the leases were bona fide to begin with, and that after securing the interpretation from the Office of Price Administration that the leases and contracts were considered evasions of Maximum Price Regulation No. 169, the packing company did effectuate termination of the leases within a reasonable length of time.

■ The record discloses that the packing company did not intend to assume the maintenance of the retail markets, that the employees or operators of the markets never received any rents from the packing company. The record shows that the terms of the leases and contracts were never carried out, that the operation of the markets continued to be the same, except that the packing company collected a percentage of the gross sales. The record does support the lower court's finding that the

leases and contracts of employment here were entered into to circumvent the regulation.

It was within the lower court's discretion to award less than treble the amount of overcharges. Inasmuch as the amendment [2] to Maximum Price Regulation No. 169, which definitely fixes such leases and contracts as evasions of the regulation, did not become effective until August 16, 1943, there was no abuse of discretion on the part of the lower court in awarding the damages.

Affirmed.

---

[2] Section 1364.406 was amended August 16, 1943 (8 Fed.Reg. 11145) to add the following subdivision:

"(c) Any transaction, device or arrangement whereby a person who sells, transfers, or delivers beef or veal to a retail establishment not wholly owned and operated by such person receives for the beef or veal a greater realization than he would be entitled to receive under this regulation for the sale of such beef or veal to a retailer is a violation of this regulation and is prohibited."