Hubert S. Sheffield, individually and under powers of attorney from ten others, brought suit against Jefferson Parish Developers Inc., alleging that the defendant had overcharged them for rents during the period beginning September 10, 1942, and ending October 31, 1944, in amounts ranging from $83.60 to $250.00, making a total overcharge due to all of the tenants combined of $1865.50. The petition seeks to recover treble this amount as damages, plus a reasonable attorneys' fee, under the Emergency Price Control Act of January 30, 1942, 56 Stat. 23, 50 U.S. Code Appendix, § 901 et seq., 50 U.S.C.A. Appendix, § 901 et seq.
Shelton W. Watts also brought suit against the defendant for $330.00, representing treble the amount of the overcharge which he alleges the defendant collected from him during the said period of time. Upon defendant's motion, the suits were consolidated for trial.
Defendant filed an exception of misjoinder of parties plaintiff in the lower court, but the record does not show that the exception was passed upon, and as defendant's counsel has made no mention of it in his brief or in oral argument, we consider that it has been abandoned.
Defendant denied that it received or accepted rental in excess of the maximum allowed by law; in the alternative, it alleged that if overcharges did occur it was in good faith and should not be condemned for treble damages. Then, assuming the position of plaintiff in reconvention, defendant sought from each claimant a certain amount which it alleged they owed it for rent.
After a trial in the lower court, plaintiff's demands were dismissed; defendant's reconventional demand was dismissed as in the case of nonsuit.
Sheffield, on behalf of himself and his principals, appealed to the Supreme Court from the judgment insofar as it dismissed their claims. No appeal was taken by Watts, nor did defendant appeal from that portion of the judgment which nonsuited the reconventional demand.
The Supreme Court (213 La. 799, 35 So.2d 737) found that it would have no jurisdiction to entertain an appeal from a judgment based on any of the separate claims, and that appellate jurisdiction cannot be extended by lumping the claims together by consent of the parties, when there is no community interest, and transferred the appeal to this court pursuant to the provisions of Act No. 19 of 1912.
The amount of rent collected by defendant is not in dispute, as we find in the transcript the following acknowledgement: "It is acknowledged between counsel that in paragraph 8 of the plaintiff's petition, under the column 'Rent Paid,' the amounts *Page 731 
stated therein are correct and are the sums which have been paid to Jefferson Parish Developers, Inc., for the addresses and by the tenants as stated in said paragraph 8 of plaintiff's petition."
The overcharges, according to the petition, aggregated $1865.50, but counsel for plaintiff, in his brief, "voluntarily reduced" the amount claimed to $1736.60.
It appears that during 1942 (but after March 1) defendant erected nineteen defense-housing dwelling units, eleven of which are involved in this litigation, under priority 7064-00191 issued by the National Housing Agency, through the War Production Board. The dwellings are situated in the Paris Park Subdivision in New Orleans, and within the New Orleans Defense Area as established by the Administrator, Office of Price Administration. Defendant completed the building project during the latter half of 1942.
The facts surrounding the approval of maximum shelter rentals are somewhat complicated. Harry B. Rainold and Archer G. Van Denburgh, two of the officials of defendant, who represented it in all negotiations hereinafter discussed, testified that the WPB priority was issued on the basis that the contemplated houses were to carry a maximum rental value of $45.00 per month, but that when the building plans and specifications were submitted to the Federal Housing Administration for approval for federal financing and insurance, that agency refused to give its assent to the project, for the reason that the contemplated houses, each of which was to contain 600 square feet, were entirely too small and not in keeping with sixty other units which had been previously built in the subdivision.
Defendant then submitted to the FHA new plans and specifications calling for houses of 800 or 900 square feet, which were subsequently approved by the FHA and the proper commitments for financing, etc., made. Rainold and Van Denburgh say that they then went back to the WPB and complained that, whereas, under the new plans and specifications, the houses were to be of larger dimensions than those originally contemplated, and would necessitate increased building costs, the rent base of $45.00 would be inadequate and insufficient to permit defendant to repay the federal loan, insurance and other costs. The WPB adopted the position that it had no jurisdiction to increase the rent base, and Rainold and Van Denburgh were referred back to the FHA. They testified that conferences were held with officials of the FHA, at which increased rentals were discussed, and that it was finally agreed that the rent base should be established at $55.00 for certain of the units and at $60.00 for the others. The witnesses state that applications for the increased rentals, as agreed upon, were filed with the FHA, and that defendant never, at any time, heard from the FHA as to what action had been taken on, or what disposition had been made of, the request for the rent increase, and that it collected from the tenants the amounts which they anticipated would be officially established on the larger units which the FHA forced defendant to erect.
Upon completion of the dwelling units, defendant registered the property with the local Rent Control Office of the Office of Price Administration, and the registration stated that the dwelling units had been newly constructed with a priority rating from an agency of the United States, and that the rent approved by this agency was $55.00 for some of the units and $60.00 for the others. The local Area Rent Director received information indicating that the priority rent approved by the WPB was in reality $45.00 and $50.00 per month, and after an investigation, and acting under Sec. 5(d) of the Rent Regulations for Housing, issued orders on September 22, 1944, covering each of the eleven units, establishing the maximum rental as follows: 4312 Van Avenue, 4105, 4234, and 4334 Rayne Drive, $45.00 per month; 4303, 4306, 4307, 4309, 4310, and 4315 Van Avenue, and 4316 Rayne Drive, $50.00 per month; the orders, in part, read as follows:
"The Rent Director has duly considered the above matter and:
"Finds that the rent approved by WPB under priority 7065-00191 was ($45.00 or *Page 732 
$50.00) per month, which amount is the Maximum Rent for the above-described accommodations." (Brackets ours.)
These orders were never appealed from. About October 25, 1944, defendant filed with the Rent Director, registrations showing that the priority rent approved by an agency of the United States was $45.00 and $50.00, as the case may be. About the same day, defendant filed a Landlord's Petition for Adjustment of Rent, asking that the rent be increased under Sec. 5(a) (3) of the regulations, on the ground that there had been a substantial increase in the services, furniture, furnishings, and equipment. The Area Rent Director issued orders on December 2, 1944 (subsequent to the period for which overcharges are claimed), slightly increasing the rent on the eleven units, "for additional equipment and services, including garage." These orders were not retrospective in effect, and defendant took no appeal from them.
Other proceedings were taken and other relief was sought by defendant within the OPA organization, which need not be recounted here, and the fact remains that the orders of September 22, 1944, and December 2, 1944, were never altered or revoked; on the contrary, these orders were ultimately affirmed by the Regional Administrator.
Notwithstanding the finality of the Rent Director's orders of September 22, 1944, counsel for defendant insists that there were no overcharges, as the priority rent established by the WPB was based upon the assumption that the smaller houses would be erected, and that defendant had the right to collect an increased rent on the larger houses which were actually built. In short, his contention is that the priority rent as established by the WPB was not binding on defendant. In an effort to bolster defendant's position, there was introduced, on the trial below, the testimony of certain governmental employees. Wade H. Sutton, Chief Underwriter of the FHA, testified that, "the houses as constructed were not the houses on which the priorities were applied for, therefore the rentals and the priorities didn't apply." A. A. White, Regional Rent Executive of the OPA at Dallas, Texas, whose testimony was taken by deposition, identified a telegram sent by him to defendant, in which he gave the following opinion: "* * * Actual units constructed differed substantially from original specifications and resulted in increased construction costs and no shelter rents were set by WPB on actual units constructed. * * *"
H. C. Happ, Regional Rent Attorney, OPA, Dallas, Texas, in a telegram, stated that his opinion of the situation was: "* * * The actual units constructed differ substantially from original specification and resulted in increased construction costs and no shelter rents were set by WPB on actual units constructed. * * *"
The opinions of these witnesses, being entirely informal and not official, are without probative value or legal effect. See Fleming v. Hanscom, 9 Cir., 162 F.2d 164.
The above mentioned orders of the Area Rent Director are the only official establishment of ceiling rents contained in the record. We are bound by them, and whether said orders were correctly issued, and the causes which provoked their issuance, are questions which we are not privileged or have authority to examine. Jurisdiction to ascertain the validity of those orders is vested solely in the Emergency Court of Appeals at Washington, D.C. The Emergency Price Control Act of 1942, supra, Sec. 204(d), provides: "The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this *Page 733 
Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."
In the case of Beers v. Peters, La. App., 29 So.2d 611, 613, we said: "It has been held in many cases that power to consider the validity of any regulation or order of the Office of Price Administration is solely vested in the Emergency Court of Appeals. Henderson v. Burd, 2 Cir., 133 F.2d 515, 146 A.L.R. 714; Bowles v. Meyers, 4 Cir., 149 F.2d 440; Bowles v. Wheeler, 9 Cir., 152 F.2d 34; Bowles v. Nu Way Laundry [Co.], 10 Cir.,144 F.2d 741. And the exclusive jurisdiction of said court applies not only in the case of a regulation of general applicability but also in the case of an individual order. Bowles v. Willingham, supra [321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892]; Yakus v. United States, supra [321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834]."
It is not disputed that a lessor who charges a higher rate of rental than is fixed by the Rent Director renders himself liable to statutory damages. Section 205(e) of the act, 50 U.S.C.A. Appendix, § 925(e), provides in part as follows: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine. * * * Provided, however, That such amount shall be the amount of the overcharge or overcharges * * * if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. * * *"
Defendant, in the alternative, contends that if the finding of the court be that overcharges of rent occurred, such was not willful, in view of the peculiar circumstances of the case; that there was utmost good faith on defendant's part, and, therefore, no penalty should be assessed against it. Section 205(e) of the act does provide that if a violation of a regulation, order, or price schedule was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation, the judgment should be only for the amount of the overcharge.
But, a most careful study of the record convinces us that defendant's violation of the act was willful, and that defendant's managing officials lacked that good faith which would have been necessary to exculpate defendant from the penalty of multiple damages. There are several significant facts which absolutely destroy the protestations of good faith. The registrations of the houses with the Rent Control Office contained the statements that base rents had been established by an agency of the United States at $55.00 and $60.00 per month, when the defendant knew, or should have known, that such statement was false. Also present is the fact that defendant collected from the tenant in 4315 Van Avenue, $50.00 unit, rental at the rate of $64.00 per month during the period in question. From the tenant in 4105 Rayne Drive, a $45.00 unit, there was collected $75.00 per month, or an overcharge of $30.00. Defendant exacted from these two tenants an amount even greater than the rental which it contends should have been correctly established on the larger housing units. *Page 734 
As we construe Sec. 205(e) of the act, in the event the price violator does not show both absence of willfulness and the presence of care to prevent the occurrence of violations, the court has discretion to determine the amount of the judgment in excess of the amount of the overcharge, however, not exceeding treble thereof. Bowles v. Krodel, 7 Cir., 149 F.2d 398; Porter v. James Henry Packing Co., 9 Cir., 155 F.2d 764; Porter v. Gray, 9 Cir., 158 F.2d 442.
Being lodged with such discretion, our conclusion is that the judgment should be twice the amount of the overcharges, or $3473.20. And, considering the time and industry devoted to the prosecution of this action by counsel for plaintiff, we believe that twenty per cent of the amount of the judgment would constitute a reasonable attorneys' fee.
Since the institution of the suit, Jefferson Parish Developers, Inc., has been placed in voluntary liquidation proceedings, and Harry B. Rainold and Archer G. Van Denburgh have been nominated and named as extrajudicial liquidators to liquidate and wind up the corporate affairs, and upon motion of plaintiff's counsel we have issued an order making said liquidators parties to this appeal.
The judgment appealed from is reversed, insofar as it dismissed plaintiff's demands, and it is now ordered, adjudged and decreed that plaintiff, Hubert S. Sheffield, on his own behalf and on behalf of his ten principals, have judgment against Harry B. Rainold and Archer G. Van Denburgh, in their capacities of liquidators of Jefferson Parish Developers, Inc., for the full sum of $3473.20, with legal interest from judicial demand until paid, and with twenty per cent thereon as attorneys' fees; in all other respects, the judgment appealed from is affirmed; costs of the lower court and of this court are to be borne by the liquidators.
Reversed in part; affirmed in part. *Page 804