REGAN, Judge.
Plaintiff, Miss Anna DuVernay, lessee, instituted this suit against defendant, Mrs. Anna Ledbetter (wife of Hernán Pallares), lessor, under Section 205 of the Housing and Rent Act of 1947, as amended by the Act of March 30, 1949, 50 U.S.C.A.Appendix, § 1895, endeavoring to recover as liquidated damages, three times the overcharge of $31 for rent paid for the months of October, November and December, 1949 and January, 1950, or a total of $372 plus reasonable attorneys’ fees. Plaintiff alleged that defendant was a nonresident of this State and, accordingly, requested that a writ of attachment issue against property bearing the' municipal No. 816-818 Henry Clay Avenue, premises allegedly owned by the defendant and in a part of which the rental overcharge occurred. This request was granted and a curator ad hoc was appointed to represent the absent defendant. A short time thereafter, the court learned that the defendant was represented by counsel of her own choice and it then ordered that the appointment of the Curator Ad Hoc be vacated.
Defendant filed several motions to dissolve the attachment which were dismissed. Thereupon she pleaded the exception of no right of action based on the mental incompetency of plaintiff, which was subsequently overruled by mutual consent of counsel. Defendant then answered and denied that she was a nonresident of the State of Louisiana residing permanently outside of the State and that she never, at any time, rented any property to the plaintiff herein. Defendant reconvened for damages in the amount of $1,000, which she alleged resulted from the wrongful issuance of the writ of attachment and further pleaded for a trial by jury.
During the course of the trial, counsel for plaintiff filed an exception of no right or cause of action aimed at the reconven-tional demand, which was sustained by the trial judge and, accordingly, the recon-ventional demand of defendant was dismissed.
The court, a qua, rendered a judgment, based on the verdict of the jury, in favor of plaintiff in the amount of $372 plus attorneys’ fees of $350 especially predicated on a stipulation of counsel before the case was given to the jury, and further ordered that the writ of attachment be maintained; that plaintiff’s privilege resulting therefrom be recognized; that the property be sold and plaintiff’s claim be paid out of the proceeds thereof. Hence this appeal by defendant. Plaintiff has answered the appeal and requested that the attorneys’ fees, which were awarded by the court, a qua, be increased by $200 in view of the additional professional work involved in the preparation and writing of the brief and the appearance in this Court for argument.
Defendant has filed the exception of no cause or right of action in this Court. We find no merit in this exception and, therefore, shall not discuss it.
The record reveals that Mrs. Mema Nep-pert, sister of the defendant, on October *575 9, 1949, leased a rear apartment in 816 Henry Clay Avenue, located in the City of New Orleans, to plaintiff by virtue of an oral lease, at a monthly rental of $45. It appears that there is no dispute that the maximum rent for this apartment, during the period in question, had been fixed by the Housing Expediter at $14 per month. Rent for the four months of plaintiffs occupancy was paid at the rate of $45 per month. The rent was paid to Mrs. Merna Neppert, sister of the defendant who, on each occasion, issued a receipt to plaintiff signed “Mrs. Anna Ledbetter, M. N.” (Merna Neppert.) The record also reflects that during the entire term of plaintiff’s tenancy and for approximately eight and one half years prior to the institution of this suit, defendant was living outside of the State of Louisiana and did n'ot return until shortly 'before the trial in the court, a qua.
Defendant, in endeavoring to reverse the judgment of the lower court based on the finding of fact by the jury, does not contend that the rental overcharge did not occur, but insists that:
(1) The evidence failed to show that the defendant was a nonresident and the attachment was wrongfully issued.
(2) Mrs. Neppert, was not acting as the agent of the defendant during her absence from the State.
(3) The damages awarded, including the attorneys’ fees, were excessive.
Counsel for defendant filed several motions to dissolve the attachment and in none of these was the existence of defendant’s domicile in the State of Louisiana offered as a reason for the dismissal of the attachment. The trial judge and the jury found, after mature deliberation, that defendant was a nonresident and we have discovered no reason to disturb this finding of fact.
Defendant’s counsel insists that the institution of this suit by way of attachment was improper because the defendant was always domiciled in the State of Louisiana.
The record clearly reveals that defendant, Mrs. Anna Ledbetter, married Her-nán Pallares, Consul General of Ecuador, at least eight and one half years prior to the institution of this suit and was residing with him, as his wife, during her absence from Louisiana, in both Panama and Houston, Texas. Defendant owned two pieces of property, one located in 816-818 Henry Clay Avenue, part of which was occupied by her mother and sister, Merna Neppert, and the other in Robert Street in the City of New Orleans. Upon being interrogated under cross-examination “Did you maintain a residence here all of the time you were away, a house with furniture in it?” defendant replied “I had my home on Robert Street and I have all my furniture there, but I rented it while I was gone, all furnished, everything I had.”
Realizing the unfavorable conclusion to be drawn from this and other similar testimony upon counsel’s foregoing contention, they now maintain that under “the laws of the United States * * * (defendant’s) her marriage to a citizen of Ecuador did not deprive her of her citizenship, and since she had a home in New Orleans, she remained domiciled in this City although she lived with her husband in a foreign country and in another State ‡ íjt ;{; ))
 While it may be true, under the provisions of the applicable Federal Statute, that an American citizen does not forfeit her citizenship by virtue of her marriage to a foreign national — it does not follow, like the night the day, that because she retained her American citizenship after her marriage — she also retained her Louisiana domicile. In our opinion it matters not whether she married a foreign national or an American citizen, if the defendant, in fact, went to live with her husband in Panama and Houston, Texas, her domicile followed his. The record shows that she remained in either or both of these places for a period of at least eight and one half years. The courts of this State have been of the opinion, on innumerable occasions, that a married woman has no other domicile and can acquire *576 no other than her husband’s. Bruno v. Mauro, 205 La. 209, 17 So.2d 253; Stevens v. Allen, 139 La. 658, 71 So. 936, L.R.A. 1916E, 1115; Switzer v. Elmer, 172 La. 850, 135 So. 608.
Article 39 of the LSA-Civil Code reads:
“A married woman has no other domicile than that of her husband; * * ‡»
Article 46 of the LSA-Civil Code provides :
“Domicile once acquired shall not be forfeited by absence on business of the State or of the United States, but a voluntary absence of two years from the State, or the acquisition of residence in any other State of this Union, or elsewhere, shall forfeit a domicile within this State.”
We are fully aware of the fact that Article 46 should not be literally construed and that the “Legislative intent” judicially construed meant the acquisition of such residence as is outlined in Article 41, that is, one which combines “the act of residing” with “the intention of making one’s principal establishment there”; or more explicit, Article 46 subjects the change of domicile from this State to another, to the same test to which Article 41 applies to change the domicile from one parish to another, however, this analysis is mere obiter and has no bearing upon the ratio deci-dendi of this case since, it is clear that under Article 39 a married woman has no other domicile than that of her husband; it is not contended by defendant or even remotely indicated by the record, that this case falls within the well-known exceptions to this general rule, as where the wife is mistreated or the conduct of the husband has afforded her the legal right to establish a separate domicile.
The statutory rule that “a married woman has no other domicile than that of her husband” is based on the social and economic doctrine of marital unity and public policy demands that the civilized concept of the family unit be protected and made secure by permitting one family (husband and wife) to have only one domicile.
Counsel for defendant laboriously contends, since it is conceded- that Mrs. Ledbetter has not lost her American citizenship, because of her marriage, it likewise follows that she must be a citizen of one of the states of the Union and, therefore, does possess a domicile in one of these States; that no one can continue to be a citizen of the United States without simultaneously being a citizen of one of the forty-eight states. We are of the opinion that these conclusions are unsound for innumerable reasons, however, two shall suffice: First, there is a vast distinction between citizenship and domicile, and, as we have pointed out hereinabove, “a married woman has no other domicile than that of her husband”, irrespective of whether she may be living in this country or elsewhere; and secondly, we consider it quite possible that a person may be a citizen of the United States and yet being homeless—a nomad—be not identified or identifiable as a citizen of any particular state. Pannill v. Roanoke Times Co., D. C., 252 F. 910.
Assuming arguendo, that the attachment was improvidently issued, nevertheless, defendant, by virtue of her answer and reconventional demand, submitted herself to the jurisdiction of the court for the purpose of deciding the only real issue of the case—whether she had been guilty of a rent overcharge.
As her principal defense, defendant insists that Mrs. Merna Neppert, her sister, was not her agent and that defendant could not be held liable for the acts of Mrs. Neppert. It is clear that there was no written authority conferred upon Mrs. Neppert to act as the agent for defendant, therefore, any agency that may have existed is one implied both in fact and in law. Defendant’s counsel contends that “written authority” was necessary in order to create the valid existence of a mandate between defendant and Mrs. Neppert. We are of the opinion that as leases may be made orally or in writing, the power to make them may be given either in writing or orally. LSA-Civil Code Article 2683-2991. Nelson v. Monroe Automobile & Supply Co., 180 La. 245, 156 So. 293.
*577 The record positively reflects that Mrs. Neppert was the agent of the defendant and this is revealed by the testimony of defendant, her sister, Mrs. Neppert, the plaintiff, the plaintiff’s brother, Albert Du-Vernay, who had occupied, on a prior occasion, the apartment in which plaintiff resided at the time the alleged overcharge is said to have occurred, and from the testimony of Eugene Matranga, Compliance Officer for the Housing Expediter. The registration of one rental unit of the property with the Office of the Housing Expediter for the purpose of establishing the rent ceiling on April 16, 1948, shows the name of Mrs. Anna Ledbetter, as owner, and is signed “Mrs. Anna Ledbetter, M. N.” All of the rent receipts, which were issued to Miss DuVernay, were signed “Mrs. Anna Ledbetter, M. N.” (Merna Neppert).
Defendant testified that Mrs. Neppert collected the rents and attended to the repairs on the property and made defendant’s homestead payments out of the rent and that she permitted her sister, when circumstances required it, to apply the balance of the proceeds of the rent to the support of their mother.
Mrs. Neppert testified that she collected rents from other tenants; that she issued receipts in the name of defendant; applied some of the rents to the mortgage indebtedness of defendant with a building and loan association; and registered the apartment with the Office of the Housing Expediter.
Mr. Matranga testified that Mrs. Nep-pert, in all contacts with the Office of the Housing Expediter, represented herself as the agent of the defendant and that the defendant responded to a registered letter addressed to her at Houston, Texas, through the agency of Mrs. Neppert.
Defendant, although testifying that her sister collected the rents, made repairs, etc., vehemently insisted in pursuing the conclusion that her real agent, at all times, was Carl Friedrichs of the Columbia Homestead Association. Mr. Friedrichs, who could have been a very important witness, did not testify and was not called as a witness for the defendant, thus giving .rise to the well-established presumption that if he had appeared, his testimony would have been unfavorable to the defendant.
The evidence clearly shows that defendant’s sister represented herself, at all times, to tenants, workmen and governmental 'bureaus as the agent for the defendant; that she collected rent; issued rent receipts in the capacity as agent for the defendant; both maintained and repaired the property owned by the defendant; and used the proceeds of the rent to reduce the defendant’s mortgage and, as the exigencies of the occasion demanded, for the support of herself and her mother.
The record reflects that this course of conduct extended over a period of at least three years, during which time the defendant obviously either acquiesced or, in fact, had initially designated her sister, Mrs. Neppert, as her agent.
Although the agency of Mrs. Nep-pert is repudiated, this conclusion cannot be supported by the evidence in view of the defendant’s and her sister’s conduct and her consent over a long period of time.
Defendant, in resisting the demands of plaintiff, also insists that the damages were excessive because bad faith was not proven. We have said heretofore that Section 205 of the Housing and Rent Act is not penal in nature. The stipulation contained in the statute relative to treble damages for overcharge is a provision for liquidated damages. Under the terms of the statute the burden of proving the violation was neither wilful nor the result of failure to exercise practical precautions was an onus to be borne by the defendant. This was neither pleaded nor proved by the defendant. Guidroz v. O’Neil, La.App.1952, 57 So.2d 703.
The evidence also reveals that in addition to plaintiff, two former tenants, Mrs. Woods and Albert DuVernay, brother of plaintiff, who occupied the apartment in question prior to plaintiff, had filed complaints with the Office of the Housing Expediter relative to overcharges in 1948. The evidence reflects that the defendant overcharged Albert DuVernay consistently *578 each month from November, 1948 through May, 1949, but it appears that no legal action was initiated with respect to his claim because prescription had intervened. The evidence is ambiguous as to whether or not Mrs. Woods was one of the former tenants of the rental unit involved here. In any event, it taxes our credulity to believe, as defendant insists, that during her absence of eight and one half years, she was not aware of what was transpiring with respect to two valuable pieces of real estate which she owned in New Orleans.
Considering the long period of time during which the overcharges were collected and in view of the fact that the overcharge amounted admittedly to the sum of $31 per month, it was encumbent upon the defendant to show “both absence of willfulness and the presence of care to prevent the occurrence of violations”. Sheffield v. Jefferson Parish Developers, La.App., 1948, 37 So.2d 729, 734.
Defendant objected to the introduction of a certain document by Mat-ranga, the Compliance Officer of the Office of the Housing Expediter pertaining to the property, and the fact that the court permitted this witness to explain to the'jury the effect or the interpretation of this document. The document introduced was an order issued by the Area Rent Director, dated May 11, 1950, and effective April 21, 1950, which permitted this particular rental unit to be converted from unfurnished to furnished, thereby increasing the rent from $14 to $26 per month. It appears that defendant’s objection is based on the fact that the overcharge occurred between October 9, 1949 and February 9, 1950, and, therefore, this document, dated May 11, 1950, bore no relevancy to the dates when the overcharge is alleged to have occurred. However, this document was part of the res gestae and merely reflected the maximum ceiling rent that the Office of the Housing Expediter permitted the landlord to charge on this particular apartment at a subsequent time. During the course of being interrogated in connection with this document, Matranga did state from records and of his own knowledge and his testimony, in this respect, remains uncontradicted in the record, that the maximum ceiling on the rental unit in question during the period from October 9, 1949 to February 9, 1950, was $14 and it is conceded by Mrs. Neppert that she issued rental receipts in the amount of $45 to the plaintiff signed “Anna Ledbetter, M. N.” Assuming arguendo, that it was error to admit this document in evidence, our conclusion would be unchanged since Matranga did testify and, as we have related hereinabove, his testimony was un-contradicted, that the maximum ceiling rent on this particular unit was $14 per month; and it is not disputed by defendant that the rent overcharge did in fact occur.
By stipulation during the trial of this case in the court, a qua, counsel mutually agreed that in the event the jury arrived at a verdict for plaintiff, the attorneys’ fees should be fixed by the jury in the amount of $350. This stipulation reserved to respective counsel the right to argue for an increase or decrease in the attorneys’ fees on appeal. As revealed heretofore, plaintiff answered this appeal and prayed for an increase of $200 in the amount of the attorneys’ fees.
In our opinion an attorney’s fee of $350 is reasonable. The record reflects that counsel for plaintiff handled this case in the lower court, which involved the filing of an original petition, request for attachment, supplemental petition, the appointment of a curator ad hoc, several appearances in the Court for the purpose of trying motions to dissolve the attachment, appearance on a rule to test the solvency of the surety on the bond for cost furnished on behalf of plaintiff, the trial of the case before a jury , which, inci-entally, occurred at the request of defendant, and this trial consumed an entire day, the preparation and writing of the brief filed before this court and counsel’s appearance herein for argument.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.