315 So.2d 893 (1975)
Ruth E. PAILET, Plaintiff-Appellee,
v.
Twyman GUILLORY and Dr. Richard R. Michel, Defendants-Appellants.
No. 5049.
Court of Appeal of Louisiana, Third Circuit.
July 3, 1975.
*894 Knoll & Knoll by John Contois, Marksville, for defendants-appellants.
Harold J. Brouillette, Marksville, for intervenor-appellant.
Riddle & Bennett by Darrel D. Ryland, Marksville, for plaintiff-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
FRUGE, Judge.
This is a suit based on a written contract of lease instituted by one of the lessors, Ruth E. Pailet, against Dr. Richard Michel and Twyman Guillory, who are personal guarantors of a corporate lessee's performance under the lease. Plaintiff alleges that the lessee has vacated the leased premises and has failed to pay rent since December 1, 1973. The defendants contend that the lease has been validly cancelled and that no rent is due and owing. Defendant Dr. Michel also filed a third party demand against Guillory for any amount for which he is cast.
The trial court rendered judgment in favor of the plaintiff in the amount of $1,980 against both defendants jointly, but not in solido, and also rendered judgment for Dr. Michel against Guillory on his third party demand.
The contract of lease out of which this action arises was signed in Marksville, Louisiana, on November 25, 1970, and had a five-year term. The leased premises is *895 part of the Estate of Anne Elster whose two surviving daughters, Rae Abramson and plaintiff Ruth E. Pailet, signed the lease as lessors. The lessee was the Cenla Equipment Company, Inc. In the lease Dr. Richard Michel and Twyman Guillory also bound themselves personally to guarantee the compliance of Cenla.
On November 3, 1971, the lease was assigned, with the written permission of the lessors, from Cenla Equipment Corporation to Twyman Guillory. In the assignment Guillory agreed to "hold harmless" both Cenla Equipment and Dr. Michel from any suit or action under terms of the lease.
The present action was instituted by Ruth Pailet, one of the lessors, for her half of rents due under the lease since December 1, 1973. She claims that no rent has been paid since that time and under an acceleration clause in the lease, defendants are indebted to her to the extent of one-half of 24 months rent at the rate of $82.50 per month, or a total of $1,980.
Defendants admit that no rent was paid after November of 1973. They contend, however, that the lease was cancelled and they are under no obligation to pay any rentals.
All matters concerning the leased property was handled for the lessors by Dr. Albert Abramson, who was the husband of Rae Abramson at the time the lease was entered into. The record shows that the defendants contacted Dr. Abramson about leasing the property, that they paid rent checks to Dr. Abramson (made out to the Estate of Anne Elster), and that Dr. Abramson handled minor repairs on behalf of the lessors on his own authority. The defendants have never had any direct contact with the lessors concerning the property. Their only contact was through Dr. Abramson.
Dr. Abramson made it clear to the defendants that he did not own the leased property and that on certain matters he could act only with the permission of the lessors. For instance, Dr. Abramson made it clear that he did not have authority to lease the premises. The lease was made only upon approval of the terms by the lessors and they signed the lease themselves. Also, the assignment of the lease from Cenla to Twyman Guillory was approved in writing by the lessors.
In March of 1973 Guillory approached Dr. Abramson and asked that the lease be cancelled. Dr. Abramson informed him that he would have to check with the lessors, Mrs. Abramson and Mrs. Pailet, as he did not have the authority to cancel. A few days later Dr. Abramson notified Guillory and Michel that the lessors had agreed to cancel the lease.
Mrs. Rae Abramson testified that she had been contacted by Dr. Abramson and had consented to the cancellation. The plaintiff, Mrs. Pailet, however, vigorously denied at trial that she had been contacted by Dr. Abramson and denied that she ever agreed to the cancellation. At trial Dr. Abramson testified that he did contact Mrs. Pailet but admitted that there may have been some "misunderstanding" regarding cancellation.
Guillory vacated the leased premises in 1973. The building had not yet been rented at the time of trial in December, 1974.
The trial judge rendered judgment for the plaintiff, finding that the lease had not in fact been cancelled. Defendants have appealed, contending that the trial court erred in holding that the plaintiff had not agreed to a cancellation of the lease and, in the alternative, in holding that plaintiff had not vested Dr. Abramson with implied or apparent authority to cancel the lease.
A contract legally entered into can be abrogated or revoked by mutual consent of the parties. La.C.C. arts. 1901, 1945, 2130.
In Louisiana, because a lease may be made pursuant to an oral agreement, C. *896 C. art. 2683, the cancellation may be made orally even if the original contract was written. Christ v. Christ, 251 So.2d 197 (La.App. 3rd Cir. 1971). In this case the lessees desired and agreed to the cancellation of the lease, as did Mrs. Abramson, one of the lessors. The sole issue therefore is whether Mrs. Pailet also agreed.
At trial Mrs. Pailet denied that she had ever been contacted by Dr. Abramson about cancelling the lease. She testified that had she been so contacted she would not have agreed to the cancellation because she needed the income from the rent. Dr. Abramson testified that he contacted Mrs. Pailet and thought she had agreed to the cancellation. He admitted that there had apparently been a misunderstanding.
The trial court clearly found that Mrs. Pailet did not agree to cancelling the lease. This is a finding of fact involving the credibility of witnesses. The trial judge had the opportunity to see and hear the witnesses and his findings may not be disturbed on appeal in the absence of manifest error. We find no manifest error here and therefore accept the conclusion that Mrs. Pailet did not personally agree to cancellation of the lease.
Appellants contend that even if Mrs. Pailet did not agree to cancellation of the lease, she is bound by the act of Dr. Abramson who was vested with the implied and the apparent authority to cancel the lease.
An agency relationship may be created through either express or implied authority. Dart Distributors, Inc. v. Foti Enterprises, Inc., 271 So.2d 705 (La.App.1st Cir. 1972). Like an express agency, an implied agency is an actual agency. Dart Distributors, Inc. v. Foti Enterprises, Inc., supra; Busby v. Walker, 84 So.2d 304 (La.App. 2nd Cir. 1955). Apparent authority, on the other hand, creates no actual agency relationship. However, where the principal clothes an agent with apparent authority to perform certain acts and a third party who has no knowledge of or reason to believe that there are limitations on that authority, deals with the agent, then the principal is bound by the acts of the agent, which although beyond the actual power delegated to him, are within his apparent authority. Broadway v. All-Star Insurance Corp., 285 So.2d 536 (La.1973); Dart Distributors, Inc. v. Foti Enterprises, Inc., supra.
In the case before us, although there was never any express agency relationship between Mrs. Pailet and Dr. Abramson, he clearly had the authority to act as her agent in some matters concerning the leased property. Dr. Abramson was given the authority to collect rents, to make minor repairs, and to represent the lessors in preliminary negotiations regarding the lease.
However, the question before us is whether he had the implied authority to cancel the lease. Implied authority is actual authority which is inferred from the circumstances and nature of the agency itself. "An agent is vested with the implied authority to do all of those things necessary or incidental to the agency assignment."Broadway v. All-Star Insurance Corporation, 285 So.2d 536, 538 (La.1973). In this case Dr. Abramson's agency authority included collecting the rent and making minor repairs. Certainly the authority to cancel the lease is not incidental or necessary to his authority to collect rent and make minor repairs. No such authority can be inferred in these circumstances, particularly where the authority to lease or permit assignment was not given.
We turn now to the issue of apparent authority. The concern here is whether the principal did anything to clothe the agent with apparent authority to perform the act though no actual authority was given. Because third persons are not privy to the actual terms of the agency agreement, they may rely upon the indicia of authority with which the agent is vested. Broadway *897 v. All-Star Insurance Corporation, 285 So.2d 536 (La.1974).
We do not find that the lessors in this case clothed Dr. Abrahamson with the apparent authority to cancel the lease. Dr. Abramson himself denied that he had any authority to do so. The lease agreement and permission for the assignment to Twyman Guillory were signed by the lessors and not by Dr. Abramson. Thus all the indications were that Dr. Abramson did not have authority to cancel.
Appellants rely on the fact that all of their communications with the lessors concerning the leased property were through Dr. Abramson. This alone is not enough. The fact that Dr. Abramson failed to secure cancellation of the lease from Mrs. Pailet is not imputable to her, but rather to the appellants since they relied on Dr. Abramson to secure cancellation.
Appellants have cited the case of DuVernay v. Ledbetter, 61 So.2d 573 (La.App.1st Cir. 1952). In that case the lessees sued the lessor for overcharges in rent under the Housing and Rent Act of 1947. The sister of the lessor was the agent for collecting the rent and making repairs to the premises. The court held the lessor liable for the overcharges made by the agent. Appellants urge that under this case Mrs. Pailet cannot disclaim the act of Dr. Abramson in cancelling the lease. We do not agree. The DuVernay case stands for the proposition that the principal is responsible for overcharges made by an agent authorized to collect rent. There is no discussion in the case which would indicate that the authority to collect rent and make minor repairs implies authority to cancel a lease.
Appellants' final argument is that because Mrs. Pailet waited nine months before making any claim to the rent she ratified the cancellation made by Dr. Abramson. However, for ratification to occur the facts must indicate a clear and absolute intent to ratify the act. Nationwide Finance Co. of Gretna, Inc. v. Pitre, 243 So.2d 326 (La.App. 4th Cir. 1971) and cases cited therein. In this case there is no evidence that Mrs. Pailet even had any knowledge that Dr. Abramson told the defendants that the lease was cancelled. In these circumstances there could be no intent to ratify.
For the reasons assigned the judgment of the trial court is affirmed. Costs are assessed to defendants-appellants.
Affirmed.