248 So.2d 336 (1971)
KRAUTKRAMER ULTRASONICS, INC.
v.
PORT ALLEN MARINE SERVICE, INC. and Equilease Corporation.
No. 4314.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1971.
Rehearing Denied June 7, 1971.
*337 Julian B. Humphrey, New Orleans, for plaintiff-appellee.
Clarence F. Favret, Jr., and Joseph Drolla, Jr., New Orleans, for defendant-appellee and defendant-appellant.
J. Barnwell Phelps of Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendant-appellant.
Before SAMUEL, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
Krautkramer Ultrasonics, Inc. sued Port Allen Marine Service, Inc. and Equilease Corporation for the purchase price of ultrasonic testing equipment, manufactured and sold by Krautkramer. Port Allen now appeals from an adverse judgment. The suit against Equilease was dismissed, and no appeal has been taken from that determination.
Krautkramer, a Connecticut corporation, was contacted on July 28, 1966 by Port Allen about the purchase of ultrasonic equipment, and on July 29, 1966 Port Allen sent a purchase order to Krautkramer for this equipment. On this same date Krautkramer wrote a letter (which apparently crossed Port Allen's letter in the mails) to Port Allen, confirming a price on the equipment recommended in the telephone conversation of the previous day and outlining terms of delivery and payment. The letter also advised that:
"I telephoned Mr. Jerry Godkins of Delta Associates, P.O. Box 5106, New Orleans, La., our Representative for your area, and asked Jerry to call you and make an appointment to demonstrate the USK 5M to you." (Emphasis supplied)
Delta Associates, Ltd., was a manufacturer's representative located in New Orleans and sold, on a commission basis, equipment manufactured by Krautkramer and other companies.
On August 3, 1966 Krautkramer shipped the equipment directly to Port Allen and invoiced them for the purchase price.
After delivery of the equipment, Port Allen entered into a "financing" arrangement whereby Equilease agreed to purchase and pay for the equipment delivered by Krautkramer, and in turn to lease the equipment to Port Allen with an option to purchase. Port Allen had previously engaged in similar lease-purchase arrangements with Equilease. Delta participated in the financing negotiations, and Delta invoiced Equilease for the purchase price, but Krautkramer was unaware of these developments.
On September 21, 1966, after the thirty day term for payment had expired, Krautkramer sent a dunning or reminder letter to Port Allen. A phone call from Port Allen to Krautkramer on September 28, 1966 revealed the financing arrangements with Equilease. However, Krautkramer still continued to seek the purchase price from Port Allen, as subsequent facts will indicate. These events were followed by an exchange of letters, dated October 4, 1966 *338 and October 6, 1966, between Krautkramer and Delta, Krautkramer wanting to know what had happened and why they had not been paid by Port Allen or Equilease.
Unknown to Krautkramer, on October 7, 1966, Equilease paid Delta's invoice, rather than paying Krautkramer, who had been trying to collect from Port Allen.
Krautkramer thereafter sent two more dunning letters to Port Allen, who in reply stated that the purchase was being financed through Equilease, whom they were paying regularly. In a letter dated December 15, 1966 from Equilease to Krautkramer, Krautkramer was informed that Equilease had paid Delta. Equilease claimed that they had no instructions to pay Krautkramer, and advised that they "had accordingly paid your dealer". Upon receiving this information, Krautkramer wrote to Port Allen on January 6, 1967, stating that they had continued to bill Port Allen because they received the purchase order from Port Allen (not Equilease), and they did not even have any knowledge that Equilease was involved until long after the transaction was completed. Krautkramer suggested strongly that all of this trouble would have been avoided, if they, Krautkramer, had been properly informed, and they further repudiated any authority of the sales representative to receive payments. Additionally, on this same date, Krautkramer sent a letter to Equilease, advising that it was not proper to pay the sales representative, who was not authorized to receive payments, and requesting that future financing agreements of this nature be engaged only by Equilease sending purchase orders directly to Krautkramer in order to assure proper invoicing.
From this point events took a turn for the worse. Delta, never having paid Krautkramer, refused to respond to any further communications, with the result that they were released as Krautkramer's sales representative. Shortly thereafter, Delta went into bankruptcy, presumably cutting off any recourse Krautkramer might have had against them.
Port Allen defends the suit that followed these events with the contention that Krautkramer clothed Delta with apparent authority to receive payment from Krautkramer equipment, and Krautkramer is estopped from denying payment to its agent.[1]
Although the Louisiana Civil Code offers no express concept of apparent authority[2] a, this concept is well embedded in our jurisprudence, presumably in response to changing commercial needs.[3]
The doctrine of apparent authority requires (1) that the principal make manifestations to a third party in some form, and (2) that the third party reasonably rely on the agent's purported authority as a result of the manifestations of the principal.
In this case the only manifestation of Delta's apparent authority which Krautkramer made to Port Allen was in the letter of July 29, 1966 referring to Delta as "our representative". While this is a manifestation that Delta possessed the power to act in some capacity for Krautkramer, we do not believe that Port Allen could reasonably have concluded that Delta had the authority to receive payment for Krautkramer.[4]
*339 Krautkramer dealt directly with Port Allen in recommending equipment and quoting prices and terms. Port Allen ordered the equipment directly from Krautkramer and received delivery directly, as well as an invoice for the purchase price. Krautkramer also sent a reminder letter after the invoice was past due, and all of these events occurred before Delta was paid the purchase price, as well as before Krautkramer knew of the Equilease financing arrangements. It can hardly be said that Krautkramer did anything to mislead Port Allen (or Equilease) into believing that Delta should receive payment for the equipment. Furthermore, as soon as Krautkramer discovered the payment to Delta, they repudiated (to both Port Allen and Equilease) the supposed authority of Delta to receive such payment.
Neither can Krautkramer be held responsible for Delta's participation in the financing arrangements, since Delta was not acting with apparent authority to engage in these separate transactions.[5] While Port Allen would point out that Equilease was the party misled, and who made payment to Delta, Krautkramer never did contract or deal with Equilease and made no manifestations to Equilease in regard to Delta's authority. What Port Allen did was done at its own risk, and was unreasonable in the light of any manifestations made by Krautkramer regarding Delta's authority. Therefore, Port Allen should not be relieved from paying the price due to Krautkramer for the purchase of the equipment.
After Krautkramer learned that Delta had been paid but did not forward the payment, Krautkramer began retaining Delta's commissions on other sales as the accounts were collected. Port Allen therefore contends alternatively that the retained funds should be set off against any amount due under the sale involved in this suit.
Since Delta collected the funds due Krautkramer, it could be argued that Delta and Port Allen both owe the debt, and any credits due by either debtor should be set off against the debt. While this argument is persuasive from an equitable standpoint, it is not legally sound under the facts of this case.
Port Allen did not present a third party demand against Delta for the payment made on its behalf by Equilease, and Delta is not a party to this litigation. With the case in its present posture, the commissions held by Krautkramer are simply Delta's funds in the hands of a third party subject to a demand by Delta or a garnishment by Delta's creditors (pretermitting considerations of the bankruptcy proceedings). It would thus be improper for this court to adjudicate a disposition of these funds on the record before us.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
Affirmed.
NOTES
[1] For a discussion of the distinction between the doctrines of apparent authority and estoppel, see Agency Power in Louisiana, 15 Tul.L.Rev. 110 (1965).
[2] See, LSA-C.C., Title 15, Of Mandate, arts. 2985-3027.
[3] These jurisprudential concepts would also alter the codal provisions dealing with persons authorized to receive payment for another. See, LSA-C.C. arts. 2140-2145 especially.
[4] See, Wogan v. Grau, No. 7888, 4 Peltier 205 (Orleans Appeals 1921) where the court held that it was not within the apparent scope of an agent's authority to receive rent payments where his sole function was to find tenants for his principal.
[5] The trial judge held, and the record confirms, that Equilease dealt with Delta as principal, rather than agent, apparently under the impression that Delta was the owner of the equpiment.