271 So.2d 73 (1972)
ANALAB, INC.
v.
BANK OF the SOUTH and Charles E. Grandbouche.
No. 5207.
Court of Appeal of Louisiana, Fourth Circuit.
December 19, 1972.
*75 Albert A. Bargas, Gretna, for defendant-appellant (Charles E. Grandbouche).
Charles E. Richards, New Orleans, for defendant-appellant (Bank of the South).
Juan A. Velasco, New Orleans, for plaintiff-appellee.
Before REDMANN, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
This is a suit by Analab, Inc. to collect payment for laboratory services requested by Charles E. Grandbouche, then president of the Bank of the South. The Bank answered, denying liability, and filed a third party demand against Grandbouche, contending that he requested the services in his personal rather than his representative capacity and that the Bank neither requested the services nor received any benefit therefrom.
Grandbouche, averring that he acted as an agent for Moramulca Mines, Inc. and not as President of the Bank when he ordered the services, filed exceptions of venue, nonjoinder of a necessary party and no cause and no right of action. He also answered and objected to the amount of the bill.
After a trial on the merits, the trial court rendered judgment in the full amount of the bill against both defendants and dismissed the Bank's third party demand. Both defendants appealed.
The Bank permitted Grandbouche to daily and actively engage in other business enterprises from his office in the Bank. In this particular transaction Grandbouche telephoned Mack S. Rowell of Analab to request analyses of the gold and silver content of native ore. Grandbouche identified himself as president of Bank of the South and asked Rowell to call at his office in the Bank to pick up the samples. When Rowell arrived, Grandbouche handed him the sample bags in boxes labeled with the Bank's name and gave him a business card showing Grandbouche as president of that institution. After the analyses were performed, Analab sent an invoice for the charges to the Bank of the South, addressed to the attention of Grandbouche. It was not until this invoice was received that Grandbouche revealed Moramulca Mines as the real party interested in the samples.
The exception to the venue of the Jefferson Parish court was properly overruled. Although Grandbouche was domiciled in Orleans Parish, this action was on a matter over which his office in Jefferson Parish had supervision. C.C.P. art. 77. Furthermore, even if Grandbouche were entitled on the grounds of improper venue to have the petition dismissed as to him, it is undisputed that venue was proper as to the third party demand filed against him by the Bank domiciled in Jefferson Parish.
Grandbouche denies personal liability on the grounds that he was acting as an agent for Moramulca Mines. Even if we accept this as true, Grandbouche is not entitled to escape liability on this defense, since he failed to disclose his agency when contracting for the services. A mandatary who acts for an undisclosed principal is personally liable. Chappuis and Chappuis v. Kaplan, 170 La. 763, 129 So. 156 (1930).
*76 Furthermore, Grandbouche admits that he did not contract the services on behalf of the bank. Had he contracted in a representative capacity, he would not be personally liable, since a corporate officer is not personally liable for contracts which he engages on behalf of the corporation. But since he contracted for the services for his personal benefit, he is personally liable on the obligation. Analab's belief that Grandbouche requested the services in an official capacity (when in fact he did so in a personal capacity) does not serve to relieve him of this personal liability.
We further believe that under these particular circumstances, where the president was acting in his personal capacity, but he and the Bank created circumstances which led Analab to reasonably believe he requested the services for the Bank, Analab is also entitled to recovery from the Bank.
The purpose of the apparent authority doctrine is to protect persons dealing in good faith with corporate officers clothed with the apparent authority to act on behalf of the corporation. Here, the Bank allowed its president to conduct personal business activities on its premises. Furthermore, Grandbouche failed to inform Analab that the services were to be performed for himself personally or for a third party, and this fact was not evident from the nature of the transaction.[1]
The reasonableness of the belief in the apparent authority of a corporate officer is determined by the facts and circumstances of each case. Here, we conclude that Analab was reasonable in believing that Grandbouche was acting within his apparent authority as president of the Bank. As against persons dealing in good faith with its president, the Bank, which contributed to the circumstances creating the apparent authority, is estopped from denying that the apparent authority is real.
However, the trial court erred in dismissing the Bank's third party demand. Grandbouche admitted that he did not contract for the services on behalf of the Bank and that the Bank did not benefit from the services. While the Bank is liable to Analab under the apparent authority doctrine, as between the Bank and the corporate officer acting for his personal benefit, the Bank is entitled to full indemnification.
The reasonableness of the cost of the services represents the primary dispute in this case. Since no price was agreed upon when the parties contracted for the services, it is implied that the parties agreed to a reasonable price. The burden is upon Analab to prove that the charges were reasonable.
Rowell testified that metal analysis constitutes approximately 5% of the company business and that the company was set up to perform some metal assays, but since gold and silver assays were unusual in this locality, different setups and special preparation were required. Rowell further stated that the company charged $10.00 per assay sample for more than ten samples, but for a smaller quantity, the company charged per assay.
Grandbouche argues that a single price per sample should have been charged for a gold and silver assay of the 46 samples, and that even at the disputed rate of $10.00, the bill of $920.00 was double that rate.
We believe Analab has established that the charge of $10.00 for each testing procedure *77 was reasonable. However, we further believer that the $10.00 rate should have been charge for each sample, not for each assay. The cover letter transmitting the testing results contained the following paragraph:
"Fire assay determination was conducted, based on the assay-ton system. Parting was performed by use of nitric acid. Final determination of gold quantity was ascertained by direct measurement. Silver quantity was ascertained by mathematical difference."
This letter indicates that a single testing procedure was used to analyze the gold and silver content of each sample, the silver quantity being finally ascertained by mathematical difference. Since it was not necessary to test each sample twice to ascertain the quantity of these two metals, it appears unreasonable to charge for two tests. This charge is also inconsistent with Rowell's testimony on the volume charge per sample rather than per assay.
Furthermore, price lists from two testing companies in the western United States (hearsay evidence introduced without objection) indicated their price of a combined gold and silver assay as the same or only slightly higher than the price of a single gold or a single silver assay.
Accordingly, the judgment of the trial court on the original demand is amended to reduce the amount of the award to $460.00; and that part of the judgment dismissing the third party demand is reversed, and judgment is now rendered in favor of Bank of the South on its third party demand against Charles E. Grandbouche for indemnification in any amount it may be required to pay under the judgment.
Amended and affirmed in part; reversed and rendered in part.
GULOTTA, Judge (concurs with written reasons attached).
GULOTTA, J., concurring.
I concur with the result reached by the majority but arrive at that conclusion in a different way. While I agree up to the point where the majority concludes that Grandbouche is responsible, I do not agree with that part of the opinion which concludes that the bank was also initially liable with Grandbouche. I fail to ascertain how it is reasonable for Analab to believe that Grandbouche was acting within the scope of his authority as agent of the bank. To the contrary, the evidence clearly shows that he was acting outside of the scope of his authority.
It would seem that gold and silver assays from the Bank of the South of Gretna would reasonably not be considered under ordinary circumstances to be done for the bank. It would appear to me that it is incumbent upon the plaintiff to ascertain whether this is business for the bank. Charles Edwin Buckley v. Woodlawn Development Corporation et al., 233 La. 662, 98 So.2d 92 (1957); American Employers Insurance Company v. Eugene Schoenfeld et al., 162 So.2d 743 (La.App. 4th Cir. 1964). This failure to so do can only result in responsibility attaching to Grandbouche and not the bank. Were this an evaluation of real estate in Jefferson Parish, then perhaps there might be some connection with the bank; or if this had been oil samples, perhaps there might be some connection. Were we dealing with the International Banking Department of a large bank, it might be construed to be reasonable and the bank perhaps made to be liable. The authority granted to its president by the bank to conduct other business certainly did not extend to billing the bank, as in this case, and having the bank responsible for the outside activities and business ventures of Grandbouche.
NOTES
[1] A bank, which derives a substantial portion of its income from interest on loans to clients involved in business ventures, reasonably would have requested technical information on which to decide an application for a loan, although a business venture involving gold and silver is admittedly unusual in this area.