352 So.2d 781 (1977)
LILLIEDAHL & MITCHEL, INC., Plaintiff-Appellee,
v.
AVOYELLES TRUST & SAVINGS BANK, Defendant-Appellant.
No. 6202.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1977.
Rehearing Denied December 14, 1977.
*784 McCollister, Belcher, McCleary, Fazio, Mikon, Holliday & Jones by Donna D. Fraiche, Baton Rouge, Lee & Lee, James N. Lee, Bunkie, for defendant-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell by Joseph Onebane, Lafayette, Harold J. Brouillette, Marksville, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
DOMENGEAUX, Judge.
This case involves the proceeds from four certificates of deposit, numbers 22, 363, 458, and 499, issued by the defendant, Avoyelles Trust & Savings Bank (Bank) to the plaintiff, Lilliedahl & Mitchel, Inc. (Corporation).
Plaintiff Corporation is engaged in the construction business. Its now deceased president and principal stockholder, Marvin Lilliedahl, was authorized by resolution of the Board of Directors to manage the financial and business affairs of the corporation. As such, Lilliedahl dealt with the defendant Bank as agent for the Corporation. Lilliedahl also dealt with the Bank on a personal basis.
Over a period of years Lilliedahl made personal loans from the Bank. Apparently, the proceeds of these loans would be deposited into the corporate account and the personal liability account of Lilliedahl on the corporate books would be credited. The Corporation then would purchase a certificate of deposit and the Bank's account on the corporate books would be debited. These certificates of deposit would then be pledged as security for Lilliedahl's loans at the Bank.
The pledges of the certificates of deposit were not reflected on the corporate books and were unknown to the auditor of the Corporation, the bookkeeper of the Corporation, and the other stockholder and current president of the Corporation, Roland Mitchel.
The present controversy arose when it was discovered after the death of Lilliedahl that the corporation was in financial difficulty. It was then revealed that four certificates of deposit owned by the corporation were cancelled by the Bank. The Corporation alleges that the proceeds from these certificates were used to pay the personal indebtedness of Lilliedahl to the Bank.
The Bank's records revealed that certificates of deposit in the following amounts were cancelled on the following dates:

CERTIFICATE OF DATE
DEPOSIT NUMBER AMOUNT CANCELLED
 22 $15,000.00 July 15, 1975
 363 $40,000.00 Dec. 27, 1974
 458 $50,000.00 Dec. 27, 1974
 499 $50,000.00 Jan. 28, 1975

The Bank's records also indicate that personal notes of Lilliedahl in the following amounts were paid on the following dates:

NOTE NUMBER AMOUNT DATE PAID
 1572 $15,000.00 July 15, 1975
 7535 $40,000.00 Dec. 30, 1974[1]
 4202 $50,000.00 Dec. 30, 1974
 1571 $50,000.00 Jan. 28,1975

The Corporation filed suit seeking payment from the Bank from the proceeds of the certificates of deposit. The trial court found the Bank liable on certificates of deposit numbers 363, 458, and 499, because the proceeds from these certificates were never paid to the Corporation. The trial court refused to find liability on certificate of deposit number 22 because the proceeds from this certificate had been deposited in the corporate account. The trial court awarded judgment for the principal amount of the certificates of deposit numbers 363, 458, and 499 and for the stated interest on these certificates from the time of the Bank's cancellation to the date of judicial demand, for a total amount of $152,846.55. The Bank appealed. The Corporation has *785 answered the appeal requesting recovery on certificate of deposit number 22.
The Bank specifies five errors upon appeal:
1. The trial court erred in failing to sustain various exceptions;
2. The trial court erred in finding that the certificates of deposit were never paid to the Corporation;
3. The trial court erred in failing to find that the Bank has a legal right and authority to apply the proceeds of the certificates of deposit to payment of Lilliedahl's personal notes to the Bank upon the instructions of Lilliedahl because of the general power and written authority given by the corporation to its president;
4. The trial court erred in failing to credit interest accrued on the certificates of deposit to the judgment; and
5. The trial court erred in adding interest to the principal sums of certificate of deposit numbers 363, 458, and 499.

I. PROCEDURAL ISSUES
Defendant Bank raised the exception of prescription in the trial court and reurges its plea on appeal. The trial court referred the plea to the merits. Defendant argues that this suit arises ex delicto for the wrongful act of the Bank. As such the action prescribes in one year.
Defendant's argument is unavailing. This is a suit arising ex contractu. Its purpose is to recover on the contracts between the Bank and its depositor, the Corporation. When the Bank issued the certificate of deposit it acknowledged a receipt of money from the Corporation and promised to repay the money to the Corporation with interest at a later date. This suit is merely to enforce the promise to pay and the claim has not prescribed under any of the Codal provisions governing the prescriptive period for contracts. C.C. Arts. 3538, 3540, and 3544.[2]
Defendant also reurges on appeal its exceptions of no cause of action and no right of action. These exceptions were overruled by the trial court.
Defendant cannot seriously contend that the Corporation has no right of action. The certificates were purchased by the Corporation and made payable to the Corporation. The Corporation was therefore the primary party to bring suit. Consequently, the exception is without merit. The exception of no cause of action is also without merit. The petition alleged sufficient facts to give rise to a cause of action for recovery on the contract of the certificate of deposit.
Defendant urges for the first time on appeal that the suit is defective for failure to join an indispensable party. Louisiana Code of Civil Procedure Article 641 provides:
"Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
No adjudication of an action can be made unless all indispensable parties are joined therein."
Defendant argues that in order for plaintiff to recover, Lilliedahl would have to be found a mismanager of corporate funds, converter, or a breacher of fiduciary duties. *786 It concludes that the succession representative of Lilliedahl is indispensable to a complete and equitable adjudication of the controversy.
Defendant's argument is unavailing. A party is indispensable only when his absence necessarily would result in an impairment of substantial rights. State, Department of Highways v. Lamar Advertising Company of Louisiana, 279 So.2d 671 (La. 1973). Defendant has failed to show how these proceedings would necessarily impair the rights of Lilliedahl's succession.

II. PAYMENT OF THE CERTIFICATES OF DEPOSIT TO THE CORPORATION
Defendant Bank urges in its brief that the trial court erred in finding that the proceeds of the certificates of deposit numbers 363, 458, and 499 were not paid to the Corporation. The court in its written reasons stated as a finding of fact that when the certificates became due and payable, the Bank, by mutual consent between it and Lilliedahl, applied the proceeds directly towards payment of Lilliedahl's personal notes. The Bank argues, however, that in actuality it paid the proceeds of the certificates to the Corporation.
Looking to the record in this case we find that certificates of deposit numbers 363 and 458 were combined to make a cashier's check in the amount of $90,000.00 at the direction of Lilliedahl. This check was made payable to the order of "Selves" and used by the Bank, again at the direction of Lilliedahl, to satisfy a personal note. Thus, defendant apparently maintains that the making of the cashier's check constituted payment on paper to the Corporation and once the corporate funds were delivered to the corporate president, the Bank was relieved of liability.
This argument seems appealing but we reject it on the following basis. The cashier's check was not made payable to the Corporation. The corporate account was never credited with any amount reflecting the proceeds of these certificates. Furthermore, we do not see how the corporation ever had actual or constructive possession of the proceeds. Lilliedahl simply instructed the Bank to apply the money owed by the Bank to the Corporation to his personal indebtedness. Absent express or implied authorization from the Corporation, it is difficult to justify any finding that the proceeds were in fact paid to the Corporation.
With regard to certificate of deposit number 499, defendant contends that since Lilliedahl was authorized to endorse instruments and since certificate of deposit number 499 was apparently endorsed by Lilliedahl on behalf of the Corporation, the Corporation received the proceeds of the certificate. This is so even though, as part of the same transaction, Lilliedahl directed the Bank to apply the proceeds to his loan. Again, the corporate account was never credited with the proceeds nor did the Corporation have actual or constructive possession of the funds. Under these circumstances we cannot find that the trial court erred in finding that the proceeds from the certificate of deposit were paid to the Corporation.

III. AUTHORITY OF LILLIEDAHL TO USE FUNDS OWED TO THE CORPORATION TO PAY PERSONAL DEBTS
Lilliedahl had been given extensive powers by resolution of the Board of Directors to manage the financial affairs of the Corporation.[3] This resolution provided, inter alia, that Lilliedahl could deal without restriction in any movable or immovable property in which the Corporation may have an interest. It allowed Lilliedahl to take out loans on behalf of the Corporation and to give security for these loans in the best *787 interest of the Corporation. It also allowed Lilliedahl to deal with banks.
The Bank argues in its brief that this resolution either gave Lilliedahl actual authority or gave the bank justification to believe that Lilliedahl had apparent authority to direct application of the proceeds of the certificates of deposit to his personal indebtedness.
In regard to Lilliedahl's authority to deal with banks on behalf of the Corporation, the resolution states:
"BE IT FURTHER RESOLVED that the following named officer of this Corporation, namely: MARVIN N. LILIEDAHL, President, be and he is hereby authorized to carry bank accounts for LILLIEDAHL & MITCHEL, INC. in such banks as he may deem best and to make the profits of money belonging to LILIEDAHL & MITCHEL, INC. in such accounts, and disburse monies on his signature for any purpose in connection with the purpose of the Corporation." [Italics by the court]
We do not feel that this provision granted Lilliedahl actual authority to apply the proceeds from corporate certificates of deposit to his personal indebtedness. This provision allowed Lilliedahl to disburse corporate funds in the bank for any purpose "in connection with the purpose of the Corporation". It is almost too elementary to state that the personal indebtedness of a corporate officer has nothing to do with the purposes of a corporation. We have searched other provisions of the resolution for some indication that Lilliedahl actually did have this authority, but we could find no authorization. We therefore find that Lilliedahl did not have actual authority to direct funds due the Corporation to reduce his personal indebtedness.
We also find that there was no apparent authority to justify the Bank's action. Apparent authority is a doctrine created by the courts to protect persons dealing in good faith with corporate officials where the corporation has taken such action or inaction as to justify a belief that the official has acted with authority. The doctrine has two requirements: (1) The principal must make some form of manifestation to an innocent third party; and (2) The third party must rely reasonably on the purported authority of the agent as a result of the principal's manifestations. Krautkramer Ultrasonics, Inc. v. Port Allen Marine Services, Inc., 248 So.2d 336 (La.App. 4th Cir. 1971). The reasonableness of the reliance is determined from all the facts and circumstances of the case. Analab, Inc. v. Bank of the South, 271 So.2d 73 (La.App. 4th Cir. 1972).
Looking to the facts and circumstances of this case, we note at the outset that this is a suit against a bank involving large sums of money. Banks stand in a peculiarly unique place in the business world. They are entrusted with huge sums of money by their depositors and must proceed cautiously when dealing with deposited sums. We also note that it is axiomatic that a corporation can only act through individuals and these individuals must be given legal power to act on behalf of a corporation. Furthermore, the resolution in this case was very detailed as to the type of transactions in which Lilliedahl was authorized to act. We feel that the Bank should proceed cautiously when applying corporate funds entrusted to the Bank to the personal debt of a corporate officer, especially when large sums of money are involved, and that some form of specific corporate authorization should be required.[4]
In this regard, we also quote with approval the following language of the trial judge in his written reasons:
"The Bank takes the position that because of the general power or written authority given by the corporation to Lilliedahl, the Bank had the legal right and authority, on the instructions of Lilliedahl, *788 to apply the proceeds of the certificates of deposit toward payment of his personal loans and notes to the Bank. The court is unable to accept this view by the Bank. To accept this, it would have to ignore that a corporation is a separate legal entity, such as another person, different and separate from the officers and stock owners. An authority by a corporation to its officer or officers, while necessary and customary, is always construed to mean actions for and in behalf of the corporation. The court knows of no law or jurisprudence which would allow an officer, having general powers to act for the corporation to use such powers to take and use the assets of the corporation for his personal use and enrichment. The Bank knew the notes he signed represented his personal debts. It knew the certificates were for and in the name of the corporation; the bank's applying these non-negotiable assets of the corporation to his personal benefit and use was a breach of contract and duty which the bank owed to the corporation. To adhere to the bank's view would be to say that its own president, because of his general powers and authority, could take over and transfer non-negotiable securities and pledges of the bank for gambling debts in the Las Vegas Casinos, and it, the bank, would have no recourse against the transferees thereof."
Thus we find that the Bank's belief that Lilliedahl had apparent authority to use corporate funds to satisfy personal debts was unreasonable.
The proposition that a person receiving corporate funds in satisfaction of an officer's personal debt is bound to restore them is not without authority. In Roney v. Peyton, 159 So. 469 (La.App. 2nd Cir. 1935), the president of a corporation gave a personal creditor a mortgage note held by the corporation in payment of a personal debt. The court found that the creditor could not rely on the mere assertions of the interested officer that the transaction was in furtherance of corporate business. The court compelled the creditor to repay the sum of money collected on the note to the corporation's receivers. See Bryceland Lumber Company Ltd. v. Kerlin, 143 La. 242, 78 So. 482 (1918).

IV. CREDITING ACCRUED INTEREST TO THE AMOUNT OF THE FINAL AWARD
The Bank has assigned error on the part of the trial court because it did not credit interest paid to the corporation on the certificates of deposit to the final amount of the judgment. We find no merit to this contention. The interest specified on the certificates was part of the agreement between the Bank and the Corporation. The Bank owed the interest as well as the principal to the Corporation. Thus no setoff was due to the Bank and the trial judge was correct in not granting such a credit.

V. AWARDING INTEREST ON THE CERTIFICATES OF DEPOSIT FROM THE DATE OF CANCELLATION TO THE DATE OF JUDICIAL DEMAND
The Bank ceased crediting interest on the certificates on the date of cancellation. The trial judge awarded interest according to the terms of the instruments from these dates to the date of judicial demand. The Bank contends that no interest was due on certificates because they were cancelled. We find no merit to this contention. Although Lilliedahl could have cashed the certificates on behalf of the Corporation, the evidence is to the effect that he "cashed" the certificates in his personal capacity. As between the Bank and the Corporation, the certificates were never actually cashed and were therefore still viable. Thus the interest on the certificates still accrued until the date of judicial demand. There was no error on the part of the trial court in including this interest in its award.

VI. PLAINTIFF'S ANSWER TO THE APPEAL
The trial court refused to allow recovery on certificate of deposit number 22. The *789 trial court in its written reasons found that the proceeds from this certificate were deposited into the corporate checking account, thus the Corporation actually received payment. When this occurred the proceeds from the certificate became comingled with other corporate funds. Lilliedahl wrote a corporate check on this account, payable to the Bank. This check was used toward payment of Lilliedahl's personal debt.
The Corporation contends that the trial judge should have awarded the amount due on certificate number 22. We disagree and affirm the trial judge's reasons. The instrument was properly credited to the Corporation's account and the Bank's obligation of payment thereby extinguished.[5]
For the above reasons we affirm the judgment of the district court at appellant's costs.
AFFIRMED.
NOTES
[1] December 27, 1974, was a Friday and December 30, 1974, was a Monday. Testimony revealed that the Bank would close its records at some time on a Friday afternoon and all transactions occurring on a Friday after that time would be shown on the Bank's records as occurring on the following Monday.
[2] Certificate of deposit number 22 was a nonnegotiable, automatic time renewing certificate purchased July 15, 1970, and automatically renewed thereafter until cashed July 15, 1975. Certificate of deposit number 458 was also a non-negotiable, automatic time renewing certificate purchased December 26, 1973, and automatically renewed until cashed on December 27, 1974. Certificate of deposit number 363 was likewise a non-negotiable, automatic time renewing certificate purchased September 27, 1974, and automatically renewed until cashed on December 27, 1974. Finally, certificate of deposit number 499, also a non-negotiable, automatic time renewal certificate was purchased on January 1, 1974, and automatically renewed until cashed on January 28, 1975. The Corporation had no knowledge of the cashing until after Lilliedahl's death on September 7, 1975. Suit was filed August 30, 1976. Thus, the claim has not prescribed.
[3] The resolution is contained in the record, however, we cannot find where it was introduced into evidence at trial. The resolution is relied upon heavily by the Bank in its brief. No issue is made of its presence in the record by the Corporation on appeal. In any event, we have reviewed the resolution and found that it does not alter our final determination.
[4] We note that a bank will be liable when it accepts a check drawn on a fiduciary account at the bank in payment of a personal debt under the Uniform Fiduciaries Act, La.R.S. 9:3801 et seq. See Guaranty Bank & Trust Company of Alexandria v. C. & R. Development Company, Inc., 260 La. 1176, 258 So.2d 543 (1972).
[5] We note that this suit was to recover on the certificate of deposit, not the amount of the check used to pay Lilliedahl's personal debt. We express no opinion regarding the Corporation's recovery on the check under the Uniform Fiduciary Act. La.R.S. 9:3805 and 3808. See Guaranty Bank & Trust Company of Alexandria v. C & R Development Company, Inc., supra.