430 So.2d 1367 (1983)
MANUEL TRUCK & EQUIPMENT CO., INC., Plaintiff-Appellee,
v.
B.G. HOOKER PETROLEUM TRANSPORT, INC., Defendant-Appellant.
No. 82-784.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
Rehearing Denied May 26, 1983.
*1368 Dubuisson & Dubuisson, James G. Dubuisson, Opelousas, for defendant-appellant.
Kenneth Pitre, Eunice, for plaintiff-appellee.
Before FORET, CUTRER and DOUCET, JJ.
CUTRER, Judge.
Manuel Truck & Equipment Company, Incorporated, instituted this proceeding against B.G. Hooker Petroleum Transport, Incorporated[1] seeking $11,196.57 allegedly due plaintiff for construction of parking facilities for defendant's trucks. The basis of plaintiff's claim is an alleged agreement whereby plaintiff was to surface a parking area for defendant's trucks at defendant's expense.
Defendant denied it entered such an agreement and refused to pay the $11,196.57. From a trial court judgment in plaintiff's favor, defendant has appealed. We affirm.

FACTS
Plaintiff operates a truck dealership on U.S. Highway 190 near Eunice, Louisiana. Plaintiff's business offers services including parking, fuel, mechanical and parts service. G.L. Manuel is the president, manager and a major stockholder of plaintiff.
Defendant transports liquified petroleum and petroleum products by truck between points in Texas and Louisiana. Wilbur Clayton Farr is the president, manager and major stockholder of defendant. Defendant's office is located in Tenaha, Texas.
Manuel and Farr had met prior to the events at issue here. They had socialized and discussed business in the past.
In September or October 1981, Farr and S.J. Wells, an employee of defendant, visited plaintiff's place of business and met with Manuel and John Bonneau, an employee of plaintiff. During this meeting the four men discussed the surfacing of a parking area for defendant's trucks. The proposed site was a vacant lot at the rear of plaintiff's truck stop. Improvements such as grading, leveling, resurfacing the lot, and adding a fuel tank were discussed at this meeting. It was agreed that Manuel would investigate the costs of surfacing of the parking terminal and get in touch with Farr.
Soon after this visit Manuel telephoned Farr with an $18,000.00 limestone resurfacing proposal. The $18,000.00 proposal was refused by Farr as being too expensive. The parties discussed a price of $11,000.00. Thereafter, plaintiff contracted with Martel's Truck & Tractor Service, Incorporated (Martel) to resurface the site with gravel. Plaintiff also installed a fuel tank on the property. The total cost for the resurfacing was $11,196.57.
After the telephone conversation, Farr had another of defendant's employees, Willard Perkins, visit plaintiff's truck stop to inspect the proposed site of the parking terminal. Perkins telephoned Farr from *1369 the truck stop to report that the site had been cleared and that the fuel tank was being installed.
Following installation, Manuel sent a letter dated January 8, 1981, to Farr enclosing the invoices for Martel's work and requesting payment of this $11,196.57 balance. When defendant had not responded by March 16, 1981, plaintiff issued a check to Martel in satisfaction of the debt.
Suit was filed on August 24, 1981. Judgment was rendered in favor of plaintiff and defendant has appealed.
The issues presented on appeal are: (1) Whether the defendant corporation is legally liable for costs of surfacing of the parking lot; and (2) Whether Farr had authority to enter into such an agreement on behalf of the defendant corporation.

VALIDITY OF AGREEMENT
Plaintiff contends that Manuel and Farr reached an agreement in their telephone conversation following a visit of Farr and Wells to plaintiff's place of business. Manuel testified that Farr agreed that defendant would pay for the resurfacing project as long as the cost of the project remained approximately $11,000.00.
Manuel testified that he and Farr had discussed the possibility of using plaintiff's idle property for defendant's parking terminal at times previous to the events of this case. Manuel also testified that, in their telephone conversation, Farr stated that defendant could not meet the $18,000.00 limestone resurface proposal. Manuel stated that Farr authorized him to proceed if he could keep the cost around $11,000.00.
Farr denies he gave Manuel permission to complete the project for around $11,000.00. Farr testified that he told Manuel that $18,000.00 was too much money and that Manuel was to call him back with a lower proposal.
The circumstances corroborate Manuel's version of the telephone conversation and alleged agreement. The events leading up to the September or October 1981, visit by Farr and Wells also support Manuel's contention that he and Farr reached an agreement in their telephone conversation.
The purpose of the initial visit of Farr and Wells to plaintiff's place appears to have been to discuss the parking facility. Although Farr testified that their purpose was primarily social, Wells stated that he and Farr stopped to talk to Manuel about the possibility of a parking space.
What occurred after the visit of Farr and Wells also supports the alleged statement. Farr directed another of defendant's employees, Willard Perkins, to visit plaintiff's truck stop. Perkins testified that Farr had asked him to check plaintiff's site to see if it met defendant's needs for a truck terminal.
During his visit Perkins telephoned Farr to inform him that the site had been cleared of bushes and that a diesel tank was being installed. In response to this telephone call, Farr testified he told Perkins to have plaintiff's people stop the work since no agreement had been reached. Perkins stated that he did not recall Farr directing him to stop the work.
Finally, plaintiff put quite a bit of effort into preparing the site for defendant's truck parking. Plaintiff contracted Martel to clear and level the site. Plaintiff further installed a diesel tank on the site and injected 7,000 gallons of diesel at a cost of $6,685.00.
In his reasons for judgment the trial judge found as a fact that defendant told plaintiff to spend $11,196.57 to prepare the parking lot for defendant's account.
In reviewing a trial court's findings of fact an appellate court cannot overrule the trial court's evaluation of witnesses and determination of facts unless the record reveals the trial court's findings are entirely wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Considering the evidence of record, particularly that mentioned above, we do not believe the trial court was entirely wrong in finding Farr told Manuel to complete *1370 the project for approximately $11,000.00, and that defendant would pay for the surfacing of the parking space.
The defendant next contends that "the evidence reveals that there was nothing more than negotiations towards entering into a contract of lease but such a contract was never consummated." This contention is without merit.
Farr stated that he intended to formulate a lease agreement to be executed by the parties of this parking facility. He contends that, since such lease agreement was not consummated, no valid agreement existed. Farr's intention to formulate a lease agreement for the parking space was not made known to Manuel. This subject matter did not arise in their conversations and Farr does not contend that he made his intentions known to Manuel. The trial court was not clearly wrong in rejecting this argument.
Farr next contends that the agreement was invalid as there was no stipulation of a term.
The stipulation of a term is not necessary to the existence of a valid contract. Caston v. Woman's Hospital Foundation, Inc., 262 So.2d 62 (La.App. 1st Cir. 1972), writ ref'd, 262 La. 1087, 266 So.2d 220 (La.1972). LSA-C.C. art. 1779 provides as follows:
"Four requisites are necessary to the validity of a contract:
1. Parties legally capable of contracting.
2. Their consent legally given.
3. A certain object, which forms the matter of agreement.
4. A lawful purpose."
Also, LSA-C.C. art. 1764 provides, in pertinent part, as follows:
"All things that are not forbidden by law, may legally become the subject of, or the motive for contracts; ...."
LSA-C.C. art. 1885 provides:
"All things, in the most extensive sense of the expression, corporeal or incorporeal, movable or immovable, to which rights can legally be acquired, may become the object of contracts."
As we apply these principles to the facts of this case we conclude that this agreement shall be considered sui generis and is a valid agreement.
Plaintiff and defendant were in related businesses. Each was in a position to provide business for the other. Defendant was in need of parking area for its trucks and could offer the service business of these trucks to plaintiff. Plaintiff was desirous of additional service business and could offer space for a parking area. Through the mutual agreement of Manuel and Farr, experienced businessmen, plaintiff and defendant entered a general business agreement for their mutual benefit. Plaintiff was to provide space for the construction of defendant's parking area in hopes of attracting defendant's service business. Defendant agreed to pay for the construction of a parking terminal. This agreement, as general as it may be, became a valid agreement between plaintiff and defendant under our law. The trial judge was correct in so ruling.

FARR'S AUTHORITY TO ACT ON BEHALF OF THE CORPORATION
Defendant counsel's next contention is based on Farr's alleged lack of authority to contract for defendant. Counsel states that without approval from the board of directors of defendant, Farr could not have bound defendant to pay for the costs of the resurfacing project.
We find the doctrine of apparent authority to be pertinent to the consideration. We have defined the doctrine as:

"[A]pparent authority is a doctrine created by the courts to protect persons dealing in good faith with corporate officials where the corporation has taken such action or inaction as to justify a belief that the official has acted with authority. The doctrine has two requirements: (1) The principal must make some form of manifestation to an innocent third party; and (2) The third party must rely reasonably on the purported authority *1371 of the agent as a result of the principal's manifestation. Krautkramer Ultrasonics, Inc. v. Port Allen Marine Services, Inc., 248 So.2d 336 (La.App. 4th Cir. 1971)....."

Lilliedahl & Mitchel v. Avoyelles Trust & Sav., 352 So.2d 781 (La.App. 3rd Cir.1977).
Defendant generally allows Farr to conduct its business without any interference. Farr testified that defendant's board of directors refused to allow him to purchase trucks at one time or another, but Farr admitted he has authority to enter contracts for defendant.
Although Farr maintained that he is required to attain board approval on any transaction involving large capital expenditures, Farr also testified he has general authority to expend over $55,000.00 on defendant's fuel each month.
Supporting Farr's general authority to administrate defendant's affairs is his admission that he is not familiar with the by-laws of defendant or with any restrictions of authority contained within the bylaws. Farr cannot be restricted to any extent by rules of which he has no knowledge.
If Farr did not have authority to contract for defendant we find that defendant has taken such action or inaction to create the impression that Farr had apparent authority to enter this agreement for defendant. We find support for this conclusion bypointing to the fact that Farr's negotiations regarding this parking terminal were not extraordinary actions. Defendant requires parking space for its trucks, therefore, the business of attaining parking space is of a general nature. As president, Farr has authority to handle the general day to day matters of defendant.
It is undisputable that plaintiff relied on the apparent authority of Farr to enter the agreement for defendant. Plaintiff followed through with the agreement and had the property prepared for defendant as contemplated by the agreement.
The reasonableness of plaintiff's reliance is to be determined from all the facts and circumstances of the case. Analab, Inc. v. Bank of the South, 271 So.2d 73 (La.App. 4th Cir.1972). Considering the discussions of the parties and the fact that never during any of these discussions did Farr inform any of plaintiff's officers or employees of his lack of authority, we find plaintiff's reliance on Farr's apparent authority to be reasonable. This contention of defendant is without merit.
For the above reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED.
NOTES
[1] The correct name of defendant is B.G. Hooker Transport, Incorporated.