**Randy T. FLETCHER**

v.

**TRI–STATE MILL SUPPLY COMPANY, INC.**

**Civ. A. No. 83–861–B.**

United States District Court, M.D. Louisiana.

April 29, 1985.

---

R. Neal Wilkinson, Baton Rouge, La., for plaintiff.

Robert J. Vandaworker, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for defendant.

**152**

POLOZOLA, District Judge:

This suit involves a dispute over an employment contract entered into between the parties. Randy Fletcher originally filed this action in state court against his former employer, Tri-State Mill Supply Company, Inc. ("Tri-State"). He seeks recovery of sales commissions allegedly due him under an employment contract pursuant to Louisiana R.S. 23:631,[1] as well as penalties and attorney's fees under Louisiana R.S. 23:632.[2] The suit was timely removed to this Court.[3] Thereafter, a trial was held on the issue of liability alone.

Tri-State is an industrial mill supplier which was formed as a subsidiary of Georgia Pacific to provide supplies to Georgia Pacific plants in the mid-south area. Although Tri-State was sold to Hollis & Co. in 1979, Georgia Pacific remains Tri-State's primary customer.

Fletcher was hired as an outside salesman in August of 1981 by Bill Lane, the manager of the Baton Rouge branch of Tri-State. Tri-State's company form PR–350, entitled "Employment Change Record," was signed by Fletcher, Lane and Curtis Cook, the company president. This form provided: "Randy to start at above salary [$1,700/month] f/a period of 6 months at with [sic] time he will go to commission basis (21.6%) of gross." At the expiration of the six month period, Fletcher was placed on a commission basis. A standard form contract was then signed by Fletcher and by Bill Lane on behalf of Tri-State on March 29, 1982. This contract provided that plaintiff would receive a 12% commission on the gross profits of all sales to Georgia Pacific and 21.6% commission on the gross profits of all other sales. Fletcher and Lane also signed another PR–350 which stated simply "change to commission."

On April 8, 1982, Fletcher received a letter from Lane which purported to modify the contract of March 29. This letter provided that the commission on power transmission supplies would be only 5% of the gross profits, but in all other respects the amount of commissions remained the same. Fletcher's acceptance of this modification was to be made on another PR–350.

By April 16, 1982, Cook had received the contract of March 29. He testified that he called Lane and advised him that the percentage for sales to Georgia Pacific was too high and that the percentage for power transmission supplies should be spelled

---

1. La.R.S. 23:631 provides in pertinent part:

   A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.

   B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section.

2. La.R.S. 23:632 provides:

   Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

3. Jurisdiction is based upon diversity under 28 U.S.C. § 1332. Fletcher is a Louisiana resident; Tri-State is an Arkansas corporation.

out.[4] Cook suggested that a commission of 3% on Georgia Pacific sales would be more appropriate. Lane relayed this information to Fletcher, and a series of negotiations ensued. Fletcher was paid under the March 29 contract for the months of April and May, but an agreement was reached between the parties in late May. A memo from Lane to Cook dated March 24, 1982, stated:

> "We would like to put Randy back on his original pay plan, which was a salary of $1800.00 per month. We are at the same time giving him notice that by the first of the year if his rate of both G.P. and outside accounts are not satisfactory he will be terminated."

Fletcher received the $1,800 per month salary from June through December, 1982, at which time he agreed to return to a commission basis. On December 29, 1982, a new PR–350 was prepared which was signed by Lane and Cook, but not by Fletcher. It stated "change to commission 21.6% general line (5% Power transmission) except G.P. 4% 1st 10,000 gross profit, 8% 2nd, 12% thereafter." In April of 1983, Fletcher was advised that as of June 1, 1983, sales to Georgia Pacific would be compensated at a flat rate of $400 per month. On May 16, 1983, two weeks before the new pay plan was to go into effect, Fletcher demanded that he be paid a commission of 12% on all Georgia Pacific sales from June 1, 1982, forward, pursuant to the contract of March 29, 1982. His demand was rejected immediately. On June 13, 1983, Fletcher was fired.

Tri-State contends that the employment contract of March 29, 1982, was subject to approval by Cook and that Lane had no authority to bind the company. As manager of Tri-State's Baton Rouge branch, Lane had the authority to hire and fire and to enter into contracts with outsiders. Tri-State contends, however, that although Lane had always set the salaries of those he hired, he had no actual authority to do so. Thus, Tri-State argues that the contract never came into existence because it was never approved by Cook.[5]

Fletcher contends that if Lane did not have actual authority, he was clothed with that authority by Tri-State. Lane set the original amount of Fletcher's salary, which was routinely approved. When the contract of March 29 was executed, Lane did not advise Fletcher that final approval would have to come from the home office. Fletcher testified that he was under the impression that a binding contract had been executed providing for the company's standard commission. Fletcher's testimony is corroborated by the testimony of Thomas Erwin, another outside salesman hired at approximately the same time as Fletcher. Erwin was placed on commission at the same time as Fletcher and executed an identical contract. He testified that he also thought that Lane had authority to execute the contract on behalf of Tri-State. For reasons which follow, the Court agrees with plaintiff's contention and finds that a valid employment contract was entered into between the plaintiff and Tri-State on March 29, 1982.

■■■ "Apparent authority" is a legal doctrine the purpose of which is to protect persons dealing in good faith with corporate agents clothed by their principals with apparent authority to act on the corporation's behalf. *Pailet v. Guillory*, 315 So.2d 893, 896 (La.App.3d Cir.1975); *Analab, Inc. v. Bank of the South*, 271 So.2d 73, 76 (La.App. 4th Cir.1972). When a third party who has neither knowledge of nor reason to believe that there are limitations on an agent's authority deals with the agent, the principal is bound by the agent's acts, even though beyond the agent's actual authority. *Pailet, supra.* Two requirements must be met for the doctrine of apparent authority to apply: (1) The principal must make some form of manifestation to an

---

4. Apparently Cook had not received a copy of the letter of April 8, since that letter did set out the percentage for power transmission supplies.

5. While the plaintiff has not argued that the contract was approved by Cook, it is interesting to note that the PR–350 which Lane and Fletcher signed on March 29 was signed by Cook.

innocent third party; and, (2) the third party must rely reasonably on the purported authority of the agent as a result of the manifestation.[6] *Bamber Contractors v. Morrison Engineering & Contracting Co.,* 385 So.2d 327, 330 (La.App. 1st Cir.1980).

■ If Lane did not have the authority to set the amount of compensation employees were to receive, this Court finds that Tri-State took such actions as to create the impression that he had apparent authority to do so. Tri-State gave Lane the authority to hire and fire, to recommend salaries, and routinely approved all of his recommendations. The contract form itself, which was provided by Tri-State, gave no indication that the company president had to approve the contract. The signature area of the contract appears as follows:

TRI–STATE MILL SUPPLY CO., INC.
/s/   Bill C. Lane
/s/   Branch Manager
     TITLE
/s/   Randy Fletcher
     SALESPERSON

Tri-State contends that the signature blank for "President" on the PR–350 forms should have indicated to Fletcher that further approval by the President of the wage change was needed. However, these forms are completed for every personnel action, including hiring, a function admittedly within Lane's authority.

■ Even if a principal clothes his agent with apparent authority, the principal will not be bound unless the third party's reliance on the corporate agent's apparent authority was reasonable. The reasonableness of this reliance is to be determined from all of the facts and circumstances of the case. *Manuel Truck & Equipment Co. v. B.G. Hooker Petroleum Transport,* 430 So.2d 1367, 1371 (La.App. 3rd Cir.1983);

*Analab, Inc. v. Bank of the South,* 271 So.2d 73, 76 (La.App. 4th Cir.1972).

■ This case is strikingly similar to the case of *Lanier v. Alenco,* 459 F.2d 689 (5th Cir.1972). Lanier was hired by Shelton, defendant's branch manager, for a term of one year. When his employment was terminated before the end of the term, he sued under Louisiana R.S. 23:631. His employer contended that Shelton had authority generally to hire, but not to hire for a fixed term. The court found, however, that apparent authority to hire for a fixed term had been created by the corporation. In reply to the corporation's argument that Lanier's reliance was unreasonable, the court stated:

[I]t was not at all unreasonable that a prospective employee would not question the hiring authority of the branch manager of the plant in which he was to work, absent something in the negotiations or in the express and announced policies of the company that would reasonably lead him to suspect otherwise.[7]

This Court finds that under the facts and circumstances of this case, Fletcher's reliance on Lane's authority was reasonable. To the best of Fletcher's knowledge, Fletcher's salary had been set by Lane. Lane failed to advise Fletcher that his new compensation rate would have to be approved by the home office. It is also clear that this fact was not evident from the nature of the transaction.[8] Furthermore, the authority to set an employee's salary normally is concomitant with the authority to hire. Lane's action in presenting Fletcher with a form commission contract was not extraordinary for a branch manager,[9] and Fletcher had no reason to suspect that Lane lacked authority to set the amount of the commission. Thus, since Lane was

---

**6.** Counsel for defendant argues at great length in his brief that the third party's reliance must be *detrimental* for the doctrine of apparent authority to apply. However, the jurisprudence upon which he relies speaks not of *detrimental* reliance but of *reasonable* reliance.

**7.** *Lanier v. Alenco,* 459 F.2d 689 at 693 (5th Cir.1972).

**8.** *See Analab, Inc. v. Bank of the South,* 271 So.2d 73, 76 (La.App. 4th Cir.1972).

**9.** *See Manuel Truck & Equipment Co. v. B.G. Hooker Petroleum Transport,* 430 So.2d 1367, 1371 (La.App. 3d Cir.1983).

clothed with apparent authority by Tri-State, a binding employment agreement was created when Lane executed the March 29, 1982 contract on behalf of Tri-State.

■ The defendant contends, however, that even if a contract did exist, a novation occurred when Fletcher reached an agreement with Tri-State to be compensated at the rate of $1,800 per month straight salary instead of on the commission basis set forth in the contract. The Court agrees with defendant's contention. The applicable principles of novation are set forth in articles 2185 through 2190 of the Louisiana Civil Code.[10] Novation is a contract whereby an existing obligation is extinguished and a new one is substituted in its place.[11] All kinds of legal obligations are subject to novation.[12] The Civil Code sets forth three ways in which novation takes place. The first, which is applicable in this case, is where a debtor contracts a new debt to his creditor. The new debt is substituted for the old one, which is extinguished.[13] Novation is never presumed. The intention to novate is the determining factor to be considered by the Court. This intention may be shown by the character of the transaction, the facts and circumstances surrounding it, and the terms of the agreement itself. *Placid Oil Co. v. Taylor*, 325 So.2d 313, 316 (La.App. 3d Cir.1975); *Antoine v. Elder Realty Co.*, 255 So.2d 625, 628 (La. App. 3d Cir.1971); *Huval Tractor, Inc. v. Journet*, 413 So.2d 978, 981 (La.App. 3d Cir.1982).

■ In this case, the facts and circumstances surrounding the agreement between Fletcher and Tri-State to pay Fletcher $1,800 per month beginning June 1, 1982, clearly indicate that the parties intended to extinguish all obligations of Tri-State under the commission contract of March 29, 1982, and to substitute a new employment contract in its place. Fletcher was paid for almost a year on various terms other than those set forth in the March 29, 1982 contract. He willingly accepted a salary of $1,800 per month for six months. Beginning on January 1, 1983, he accepted payment on a sliding commission basis. Fletcher failed to assert the continuing validity of the contract of March 29, 1982, until May 16, 1983, two weeks before the effective date of a new pay plan which replaced his Georgia Pacific commission with a flat fee of $400 per month. Thus, the Court finds that the agreement between the parties which changed Fletcher's method of compensation from commission to salary effective June 1, 1982, was a novation which extinguished any obligation of Tri-State under the contract of March 29, 1982.

In summary, the Court finds that Tri-State clothed Lane, its branch manager, with apparent authority to fix the amount of compensation paid to employees including the plaintiff. Fletcher's reliance upon Lane's authority was reasonable under the circumstances of this case. Consequently, the execution of the employment agreement of March 29, 1982, by Lane created a valid and binding contract. However, the contract was extinguished by novation when the new agreement to return Fletcher to a salaried basis was reached by the parties. As a result of the novation, the defendant has paid the plaintiff all of the salary which was due him under the various agreements and pay plans. Therefore, plaintiff is not entitled to recover additional compensation from the defendant under the facts of this case.

For the above reasons, plaintiff's suit shall be dismissed with prejudice at his costs.

Judgment shall be entered accordingly.

---

10. The obligations articles of the Louisiana Civil Code were amended in 1984. As these changes were substantive, the articles as they existed prior to the amendments will be applied.

11. *La.Civ.Code* art. 2185 (1952) (current version at *La.Civ.Code* art. 1879 (Supp.1984)).

12. *La.Civ.Code* art. 2188 (1952) (eliminated as unnecessary (Supp.1984)).

13. *La.Civ.Code* art. 2189 (1952) (current version at *La.Civ.Code* art. 1881 (Supp.1984)).